**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | **CIVIL ACTION NO.** |
| RAYMOND MANAGEMENT COMPANY, INC., ET AL., | § § § | |
| *Defendants.* | § § | |

**AMCO INSURANCE COMPANY'S
ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, AMCO Insurance Company ("AMCO" or "Plaintiff"), pursuant to 28 U.S.C. §2201(a) and Federal Rule of Civil Procedure 57, and files this its Original Complaint for Declaratory Judgment against Defendants Raymond Management Company, Inc. ("Raymond" or "Insured") and Robert Benton, Jennifer Benton, and Caitlin Benton as next friend of H.B., a minor child (collectively "Underlying Plaintiffs") (together with Raymond, collectively "Defendants"). AMCO seeks a declaratory judgment that it is not obligated to defend or indemnify Raymond against the claims asserted by the Underlying Plaintiff in an underlying lawsuit, and shows:

**INTRODUCTION**

1. AMCO seeks a judicial determination that it owes no duty to defend or indemnify Raymond against the claims raised in the underlying lawsuit, styled *Robert Benton, Jennifer Benton, and Caitlin Benton as next friend for H.B., a minor child v. Raymond Management Company, Inc.;* Cause Number 2024-006750-2; pending in the County Court of Law, No. 2, in Tarrant County, Texas ("Underlying Lawsuit").

**PARTIES**

2. At all pertinent times, AMCO was, and still is, a corporation organized and existing

- 1 -

under the laws of the State of Iowa, with its principal place of business in Iowa.

3.     At all pertinent times, Defendant Raymond Management Company, Inc. was, and still is, a foreign company doing business in the State of Texas, with its principal place of business located at 8333 Greenway Blvd., Suite 200, Middleton, WI 53562, and may be served via its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texad 75201-3136

4.     Robert Benton was, and still is, a Texas citizen and resident, who may be served with process at 306 W. Richmond, Quinlan, Texas 75474-87953

5.     Jennifer Benton was, and still is, a Texas citizen and resident, who may be served with process at 306 W. Richmond, Quinlan, Texas 75474-8795.

6.     Caitlin Benton, a/n/f of H.B. a minor child was, and still is, a Texas citizen and resident, who may be served with process at 13304 Wysong Dr # 13304WD, Haslet, Tx 76052-3591.

7.     Underlying Plaintiffs are parties with an interest in the outcome of this litigation because they are the plaintiffs in the Underlying Lawsuit, who must be joined to this litigation because even though they are not parties to the Policy at issue, they will not be bound by a judgment rendered as to the Policy's scope of coverage unless they are made a party to this lawsuit. *Dairyland County Mutual Insurance v. Childress,* 650 S.W.2d 770 (Tex. 1983).

## **JURISDICTION AND VENUE**

8.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is diversity of citizenship among the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs because the Underlying Plaintiffs in the Underlying Lawsuit seeks monetary relief of between $250,000 - $1 million against Raymond.

PD.62109292.1

9.      Venue is proper in the United States District Court, Northern District of Texas, Forth Worth Division pursuant to 28 U.S.C. §1391 because the Underlying Lawsuit is pending in a court within this venue and is where the underlying incident occurred, the policy in dispute insures the hotel at issue/property within this district, Underlying Plaintiffs reside within this district on information and belief, and all parties are subject to the jurisdiction of this Court.

## FACTUAL BACKGROUND

### *The Underlying Lawsuit*

10.     On September 13, 2024, Underlying Plaintiffs filed the Underlying Lawsuit against Raymond in the County Court of Law, No. 2, in Tarrant County, and the current live pleading is the First Amended Petition. A true and correct copy of the Original Petition is attached as Exhibit A, and the First Amended Petition is attached as Exhibit A-1.

11.     According to the First Amended Petition (the "Petition"), it is alleged that on March 31, 2023, Underlying Plaintiffs Robert and Jennifer Benton, with their granddaughter, H.B., were business invitees and overnight hotel guests on the premises of Raymond's business, Hampton Inn & Suites Fort Worth Downtown ("Hotel"), located at 1001 Commerce Street in Fort Worth, Texas. See Ex. A-1, ¶ 4.01.

12.     Underlying Plaintiff Caitlin Benton was not present for any activities, but this Complaint will continue to refer to Underlying Plaintiffs in relation to the activities alleged at the Hotel for ease of reference. See Ex. A-1, ¶ 4.01.

13.     When Underlying Plaintiffs checked into their room at the Hotel, a black electronic device was present and operating. See Ex. A-1, ¶ 4.02. This device was alleged by Underlying Plaintiffs in their pre-suit notice and what has been determined to be an ozone machine that purports to help clean rooms between guests.

- 3 -

14. The Underlying Plaintiffs went to sleep and woke up from their sleep with sudden and uncontrollable coughing and an inability to breathe well. See Ex. A-1, ¶ 4.03.

15. That same night, Jennifer Benton informed the Hotel's front desk staff of their sudden onset of respiratory distress, and the staff member on duty informed her that the black electronic device was not supposed to be in the Hotel room and was the cause of their bodily injuries. See Ex. A-1, ¶ 4.04.

16. The Underlying Lawsuit alleges that Raymond should have turned off or removed the black electronic device and that the failure to do so created a dangerous and hazardous condition which was further compounded by the failure of Raymond's agent, servants and/or employees to sufficiently warn or display any caution placards or warning signs of the black electronic device in the Hotel room. The Underlying Lawsuit alleged that Raymond had actual knowledge of the condition it created. See Ex. A-1, ¶ 4.05.

17. Based on the above allegations, the Underlying Plaintiffs assert the following causes of action or theories against Raymond: 1) respondeat superior; 2) negligence; 3) gross negligence. *See* Ex. A-1, ¶ 5.01 – 6.08.

18. The Underlying Plaintiffs seek to recover for the following alleged damages for past and future: 1) medical expenses, physical pain and suffering, mental anguish, physical impairment; 2) loss of wages and loss of earning capacity (Robert Benton only); 3) loss of companionship and society (Caitlin Benton only);  4) exemplary/punitive damages; 5) prejudgment and post-judgment interest; 5) costs of court. *See* Ex. A-1, ¶ 6.08 - 10.

### *The Policy*

19. AMCO issued Policy No. ACP GLDO 3039553007, effective January 1, 2023 - January 1, 2024, to Raymond (the "Policy"). A true and correct copy of the Policy is attached as Exhibit B and is adopted by reference here.

- 4 -

20. The Policy provides Raymond with Commercial General Liability ("CGL") coverage in accordance with the specific terms, exclusions, limitations, definitions, and conditions stated in the Policy. *See*, generally, Exhibit B.

21. The Policy lists the Hotel location among the properties within the scope of the coverages offered. See Exhibit B.

22. Per the CGL Coverage Form (CG 00 01 04 13), the Policy's "insuring agreement" provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
> >
> > (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.   Damages because of "bodily injury" include damages claimed by any person or organization

- 6 -

for care, loss of services or death resulting at any time from the "bodily injury".

23.     According to SECTION V – DEFINITIONS, the Policy defines an "occurrence" as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Additionally, the term "bodily injury" is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.*

24.     The Policy is subject to the Total Pollution Exclusion with a Hostile Fire Exception Endorsement ("Pollution Endorsement") (form CG 21 55 09 99), which deletes and replaces exclusion (f) in the coverage form, applies to the claims, and provides as follows:

**f. Pollution**

1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged  or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
   a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

   b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2) Any loss, cost or expense arising out of any:

   a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

- 7 -

Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

25.     The Policy contains the Definition of Pollutants Endorsement (form CG 73 22 02 15), the definition of "pollutants" is replaced and amended, and the definition is stated as follows:

"Pollutants" means any organic or inorganic substance or material that is a solid, liquid, gaseous or thermal irritant or contaminant including, but not limited to: smoke, vapor, soot, fumes, acids, alkalis, chemicals, fibers, particles, sludge, by-products, waste (as currently defined at 40 C.F.R. § 261.2 and § 261.3 and as may be amended) and any substances or materials identified in the Schedule. Waste includes, without limitation, materials that have been, or are to be, recycled, reconditioned or reclaimed.

"Pollutants" includes, but is not limited to: adhesives; ammonia and ammonia solutions; chemicals used in dry cleaning operations including, but not limited to: halogenated organic solvents (e.g., perchloroethylene or otherwise known as tetrachloroethene, perc or PCE), petroleum-based solvents, glycol ether-based solvents, silicon-based solvents, liquid carbon dioxide solvent, detergents, other agents (for sizing and spotting), bleaches, agents used to adjust the properties of solvents (e.g., neutralizing agents and anti-foaming agents), and chemicals used in the cleaning and maintenance of dry cleaning equipment; cleaning solutions; detergents, soaps and solvents; coatings, finishes and sealants (including, but not limited to: lacquer, paints, polishes, resins, shellac, varnish and wax); dyes, inks and stains; mercury and compounds containing mercury (including, but not limited to: methylmercury, dimethylmercury, ethyl mercury); polychlorinated biphenyls; ketones (all compounds and isomers including, but not limited to: acetone, methyl acetone, cyclohexanone, diethyl ketone, ethyl methyl ketone, methyl isobutyl ketone, methyl isopropyl ketone, methyl propyl ketone, methyl vinyl ketone, methyl propanone); fertilizer and soil amendments; fungicides, herbicides, insecticides, and pesticides; garbage, refuse and trash (including, but not limited to: household, commercial,    industrial);

sewage; biological waste; inert gases; natural gas, natural gas by-products and natural gas derivatives (including, but not limited to: butane, propane, LPG); petroleum, petroleum by-products, and petroleum distillates (including, but not limited to: diesel fuel, gasoline, heating oil, kerosene, grease, lubricants, propane, LPG, motor oil, mineral oil, mineral spirits, tar, asphalt, naphtha and naphtha compounds); brake fluid (glycol mineral oil or silicon based); coolants (including, but not limited to ethylene glycol and propylene glycol); hydraulic fluid (composed of mineral oil or natural oil base stocks); transmission fluid (mineral oil or synthetic); exhaust particulate matter and gases (including, but not limited to: carbon dioxide, carbon monoxide, hydrocarbons, nitrogen oxides, ozone); refrigerants (including, but not limited to: anhydrous ammonia, any chlorofluorocarbons, hydro-chlorofluorocarbons, perfluorocarbons); wood preservatives (including, but not limited to: alkaline copper quat, creosote, chromated copper arsenate, pentachlorophenol); alcohols; bromine and compounds of bromine; chlorine and

- 8 -

compounds of chlorine; fluorine and compounds of fluorine; metals and compounds of metal (including but not limited to: arsenic, cadmium, chromium, copper, thallium, selenium); brine; peroxides; nano fibers, particles and tubes; and radioactive material.

In addition, "pollutants" includes, but is not limited to: hazardous substances listed in the Comprehensive Environmental Response, Compensation, And Liability Act (CERCLA) 2007 Priority List (and any future priority lists); list of hazardous wastes in the Federal Code of Regulations Title 40, §261.30-261.35; U.S. Environmental Protection Agency Chemical References Complete Index; and U.S. Department of Health And Human Services Agency For Toxic Substances, and any other substance which has been, is, or becomes in the future the subject of any law, statute, regulation, ordinance or other governmental enactment concerning the presence of toxic, hazardous, damaging or harmful substances in the soil, air, atmosphere, biota or water (whether indoors or out, above, at or below ground-level) or is alleged to be        toxic, hazardous, damaging or harmful to human health or to the soil, air, atmosphere, biota, or water (whether indoors or out, above, at or below ground-level).

COMMERCIAL GENERAL LIABILITY COVERAGE PART OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART PRODUCT WITHDRAWAL COVERAGE PART

The definition of "pollutants" applies whether or not the "pollutant" has any function in your business, operations, premises, site or location.

RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The definition of "pollutants" applies whether or not the "pollutant" has any function in your business, operations, or "job location". *Id.*

26.     The Policy is subject to the Exclusion – Asbestos, Electro-Magnetic Radiation, Lead and

Radon Endorsement (form CG 70 23 10 96), which applies and provides, in part, as follows:

This policy does not apply to any claims arising out of or alleged to have arisen out of any of the following:

\*\*\*

**2.** Electro-magnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electro-magnetic emissions or radiation from use, exposure, existence, detection, removal, elimination or avoidance of electrical energy.

\*\*\*

**4.** Radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any

- 9 -

act, error, omission, failure to warn, or other duty involving radon
or any other radioactive emissions, their use, exposure, existence,
detection, removal, elimination or avoidance.

27.     The Policy is subject to the Limited Amendment of Pollution Exclusion – Food Services

Endorsement (form CG 81 37 05 18), which applies and provides, in part, the following:

> "Bodily Injury" to your customers or "property damage" to your
> customers' personal property if sustained at a premise shown in the
> Schedule of this policy and caused by:

> **a.** Cleanser or sanitizers used for localized cleaning and/or
> sterilization of fixtures and/or equipment at the inured
> location(s);

> ***

> Provided that:

> **a.** The use or disposal of such substances in Paragraph a. and b.
> above complies with all instructions and standards of any
>   **1.** Manufacturer; or

>   **2.** Federal, state, or local government statute, ordinance,
>   regulation or license requirement

> **b.** Each use of substances in Paragraph a. and b. above ends, in its
> entirety, at an identified time within twenty-four (24) hours of the
> beginning of each use

28.     The Underlying Lawsuit seeks recovery for gross negligence, and AMCO submits

that the insurability of punitive damages is arguably barred by public policy under state law.

## COUNT I – DECLARATORY RELIEF

29.     AMCO adopts and incorporates by reference the allegations set forth in the

preceding paragraphs above as though completely and fully set forth herein.

30.     There is an actual, present, and existing controversy between AMCO and the

Defendants regarding whether the Policy provides coverage in connection with the claims

presented by the Underlying Plaintiff against Raymond in the Underlying Lawsuit.

- 10 -

PD.62109292.1

31.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, AMCO seeks a judicial declaration of its rights and duties under the Policy. The Court's declaration will confer certainty on the parties and serve the interests of justice.

32.     AMCO contends it has no duty to defend or indemnify Raymond in connection with the Underlying Lawsuit because the allegations and facts of the Underlying Lawsuit allege matters which fall, whether partially or entirely, within the scope of the Total Pollution Exclusion with a Hostile Fire Exception Endorsement (form CG 21 55 09 99).

33.     AMCO contends it has no duty to defend or indemnify Raymond in connection with the Underlying Lawsuit because the allegations and facts of the Underlying Lawsuit allege matters which fall, whether partially or entirely, within the scope of the Definition of Pollutants Endorsement (form CG 73 22 02 15).

34.     AMCO contends it has no duty to defend or indemnify Raymond in connection with the Underlying Lawsuit because the allegations and facts of the Underlying Lawsuit allege matters which fall, whether partially or entirely, within the scope of the Exclusion – Asbestos, Electro-Magnetic Radiation, Lead and Radon Endorsement (form CG 70 23 10 96).

35.     AMCO contends it has no duty to defend or indemnify Raymond in connection with the Underlying Lawsuit because the allegations and facts of the Underlying Lawsuit allege matters which do not fall within the scope of the Limited Amendment of Pollution Exclusion – Food Services Endorsement (form CG 81 37 05 18).

36.     AMCO contends it has no duty to defend or indemnify Raymond in connection with the Underlying Lawsuit because the allegations and facts of the Underlying Lawsuit allege matters which fall, whether partially or entirely, with state law that prohibits as against public policy the insurability for punitive/exemplary damages.

PD.62109292.1

**PRAYER**

WHEREFORE, AMCO Insurance Company respectfully prays that this Honorable Court:

a.  That process be issued as required by law and the Defendants are served with copies

   of the Summons and Original Complaint for Declaratory Judgment;

b.  Defendants answer this Original Complaint;

c.  The Court enter a declaratory judgment that AMCO has no duty to defend Defendant

   Raymond against the claims asserted by the Underlying Plaintiffs in relation to the

   Underlying Lawsuit;

d.  The Court enter a declaratory judgment declaring that AMCO has no duty to

   indemnify Defendant Raymond against the claims asserted by the Underlying

   Plaintiffs in relation to the Underlying Lawsuit;

e.  Award Plaintiff the costs of this action and any other relief that the Court deems just

   and proper, whether at law or in equity.


Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/Mary "Amy" Cazes Greene*
       Mary "Amy" Cazes Greene
       Texas Bar No. 24005647
       Federal Bar No. 22671
       1001 Fannin, Suite 2200
       Houston, Texas 77002
       Telephone: (713) 626-1386
       Fax: (713) 626-1388
       Email: amy.greene@phelps.com

**ATTORNEY FOR PLAINTIFF AMCO
INSURANCE COMPANY**

PD.62109292.1